UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONSOLIDATED PIPE & SUPPLY
COMPANY, INC., an Alabama
Corporation,

       Plaintiff,

v.                              Case No.:  2:24-cv-284-JLB-KCD

R.P. UTILITY & EXCAVATION
CORP. and ATLANTIC SPECIALTY
INSURANCE COMPANY,

       Defendants.

_____/

**<u>ORDER</u>**

Before the Court is the Motion to Dismiss filed by R.P. Utility & Excavation

Corp. ("R.P. Utility") and Atlantic Specialty Insurance Company ("Atlantic")

(together, the "Defendants").[1]  (Doc. 16).  Consolidated Pipe & Supply Company,

Inc. ("CPS" or "Plaintiff") filed a response.  (Doc. 18).  As set forth herein, the motion

is **GRANTED in part and DENIED in part**.

---

[1] Defendants failed to comply with Middle District of Florida Local Rule 3.01(g) by their failure to include a "Local Rule 3.01(g) Certification."  Defendants are warned that compliance with the Local Rules is required, and a thorough review of such must be conducted prior to any further filings with the Court.

# BACKGROUND[2]

This is a dispute over a credit agreement (the "Agreement") between R.P. Utility and CPS.  In connection with R.P. Utility's construction project for Lee County, R.P. Utility furnished a public construction bond (the "Bond") (Doc. 1-1) with Atlantic as surety.  (Doc. 1 at ¶¶ 6–7).  R.P. Utility executed an application for credit (Doc. 1-2) with CPS to procure construction materials related to the project.  (Doc. 1 at ¶ 9).  The Agreement required R.P. Utility to pay CPS's invoices within 30 days of receipt or else face financing charges and other costs.  (*Id*.).  R.P. Utility failed to pay certain invoices from CPS pursuant to the Agreement.  (*Id*. at ¶ 11).

CPS brings breach of contract, open account, and quantum meruit claims against R.P. Utility and a payment bond claim against both R.P. Utility and Atlantic.  (*Id*. at 5–9).  Defendants argue the Complaint should be dismissed, or in the alternative, stayed, and arbitration should be compelled based on the Agreement's arbitration clause.  (Doc. 16).  CPS contends that they are not bound by the arbitration clause and that the payment bond claim is not within the purview of the Agreement.  (Doc. 18).  The Court grants the motion in part for the reasons set forth below.

---

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).  Accordingly, this background section relies on the facts recited in the Complaint.  (*See* Doc. 1).

2

## LEGAL STANDARD

"[A]rbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).  The "validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* . . ." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005) (citations omitted).  The Federal Arbitration Act ("FAA") provides that a contract containing an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA requires a court to compel arbitration when "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citations omitted).  Thus, for agreements that fall within the scope of the FAA, "state law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley*, 428 F.3d at 1368 (citation omitted).

## DISCUSSION

In their Motion to Dismiss (Doc. 16), Defendants argue that this Court lacks subject-matter jurisdiction over this case because of a binding arbitration clause within the Agreement.

The Agreement's arbitration clause states the following in its entirety:

> All disputes, claims or controversies (individually or collectively, a "Dispute") between Seller and Buyer arising out of or relating to this Agreement, including without limitation Disputes based on or arising from an alleged tort, will be resolved by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Disputes will be arbitrated in Birmingham, Alabama, USA. Defenses based on statutes of limitations and similar doctrines will be deemed commencement of an action for such purposes. The parties will select arbitrators in accordance with the Commercial Arbitration Rules of the AAA. The AAA will designate a panel of ten potential arbitrators knowledgeable in the subject matter of the Dispute. Seller and Buyer will each designate, within thirty (30) days of receipt of the list of potential arbitrators, one of the potential arbitrators to serve, and the two arbitrators so designated will select a third arbitrator from the eight remaining candidates. ***Notwithstanding the foregoing, [CPS] reserves the right to resolve or bring any Dispute in a court of competent jurisdiction in accordance with Paragraph 12.***

(Doc. 1-2 at ¶ 14) (emphasis added). Paragraph 12 states that "the parties irrevocably agree that the exclusive venue for all disputes between the parties will be the state and federal courts in Birmingham, Alabama, U.S.A." (Doc. 1-2 at 6).

CPS argues that the Agreement absolves CPS of any obligation to arbitrate and that, in any case, Count IV of the Complaint is not subject to the Agreement's arbitration provision because it arises out of the Bond rather than the Agreement. (Doc. 18 at 2).

4

## I.    Whether Counts I, II, and III should be dismissed pursuant to the Agreement's arbitration provision

The existence of an agreement to arbitrate between the parties is "simply a matter of contract." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). In construing arbitration agreements, courts apply state-law principles relating to contract formation, interpretation, and enforceability. *Caley*, 428 F.3d at 1367–68. "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Id.* at 1368 (citation and internal quotations omitted).

Here, Alabama law applies to the construction of the Agreement between R.P. Utility and CPS, as the Agreement explicitly states that it "shall be governed by, and construed in accordance with, by the internal laws of the State of Alabama, without regard to its conflict of laws rules." (Doc. 1-2 at ¶ 12).

Under Alabama law, the parties seeking to compel arbitration—in this case, Defendants—"must first prove both that a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375, 378 (Ala. 2006). "Once this showing has been made, the burden then shifts to the nonmovant to show that the contract is either invalid or inapplicable to the circumstances presented." *Id.* There is no dispute in this case that a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce.    The only issue before the Court is whether CPS met its burden of showing that the arbitration provision

5

within the Agreement is "invalid or inapplicable to the circumstances presented." *Id.*

CPS argues that the last sentence of the Agreement's arbitration provision absolves CPS of any obligation to arbitrate. (Doc. 18 at 6). CPS further argues that the Agreement's arbitration provision "preserves [CPS's] right to 'bring any Dispute in a court of competent jurisdiction . . . .'" (*Id.* (quoting Doc. 1-2 at ¶ 14)). But while CPS complains that Defendants failed to address the last sentence of the Agreement's arbitration provision in their Motion to Dismiss, CPS oddly omitted the remainder of that sentence in its Response. (*See id.*). The final sentence of the Agreement's arbitration provision reads the following in its entirety, "Notwithstanding the foregoing, [CPS] reserves the right to resolve or bring any Dispute in a court of competent jurisdiction in accordance with Paragraph 12." (Doc. 1-2 at ¶ 14). Paragraph 12 of the Agreement specifies that "the parties irrevocably agree that the exclusive venue for all disputes between the parties will be the state and federal courts in Birmingham, Alabama, U.S.A."[3] (*Id.* at ¶ 12).

CPS's contention that the Agreement absolves CPS of any obligation to arbitrate is therefore incorrect. While the Agreement's arbitration provision provides CPS with an alternative to arbitration—the right to bring its claims in a state or federal court in Birmingham, Alabama—CPS instead brought its claims in

---

[3] Alabama Courts enforce such arbitration clauses lacking mutuality of choice of forum. *See Ex parte Isbell*, 708 So. 2d 571, 574 (Ala. 1997); *see also Goodwin v. Ford Motor Credit Co.*, 970 F. Supp. 1007, 1014 (M.D. Ala. 1997) (interpreting Alabama law); *see also Johnnie's Homes, Inc. v. Holt*, 790 So. 2d 956, 964 (Ala. 2001).

a federal court in Fort Myers, Florida.  The Agreement's arbitration provision prevents this.  (*See* Doc. 1-2 at ¶¶ 12, 14).  CPS attempts to dispense with this requirement in a footnote, arguing that Paragraph 12 of the Agreement is unenforceable because of a Florida statute.  (Doc. 18 at 3 n.2).  But, as previously discussed in this Order, Alabama law governs this Court's interpretation of the Agreement.  (*See* Doc. 1-2 at ¶ 12).  CPS did not otherwise argue that the arbitration provision is "invalid or inapplicable to the circumstances presented." *Smith*, 934 So. 2d at 378.  Thus, Defendants' Motion to Dismiss (Doc. 16) is **GRANTED in part,** and Counts I, II, and III of the Complaint (Doc. 1) are **DISMISSED**.

## II.    Whether Count IV should be dismissed pursuant to the Agreement's arbitration provision

Count IV of CPS's Complaint is brought pursuant to section 255.05[4] of the Florida Statutes.  (*See* Doc. 1 at ¶ 31 (citing Fla. Stat. § 255.05)).  This statutory claim is subject to Florida law.

Under Florida law, "the three fundamental elements that must be considered when determining whether a dispute is required to proceed to arbitration are: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (citing *Seifert v. U.S.*

---

[4] Florida Statute § 255.05(1)(c) provides claimants with a "cause of action against the contractor and surety for the amount due . . . under the claimant's contract."

*Home Corp.*, 750 So.2d 633, 636 (Fla. 1999)).  Florida law requires that the party seeking enforcement of the arbitration agreement prove that the agreement exists. *See, e.g., Ragland v. IEC US Holdings, Inc.*, Case No. 23-12389, 2024 WL 340849, at *3 (11th Cir. Jan. 30, 2024) (noting that Florida law required defendant, who sought to enforce an arbitration provision, to prove that an arbitration agreement existed). Thus, it was Defendants' burden to establish that a written agreement to arbitrate Count IV existed.

Defendants did not meet their burden.  Instead, in support of their contention that all of the claims in CPS's Complaint (Doc. 1) are subject to arbitration, Defendants merely point, without meaningful explanation, to the Agreement's arbitration provision.  (*See generally* Doc. 16).  The Agreement's arbitration provision specifies that "[a]ll disputes . . . *arising out of or relating to this Agreement* . . . will be resolved by binding arbitration . . . ."  (Doc. 1-2 at ¶ 14 (emphasis added)).  Defendants have not established that the Agreement encapsulates claims arising under the Bond.  Thus, Defendants' Motion to Dismiss (Doc. 16) is **DENIED in part** as to Count IV of the Complaint (Doc. 1).[5]

---

[5] The Court has subject matter jurisdiction over the payment bond claim, as it involves citizens of different states and an amount in controversy that exceeds $75,000.  *See Blevins Rd. Boring, Inc. v. Endurance Assurance Corp.*, No. 8:19-cv-893, 2019 WL 8953064, at *1 (M.D. Fla. June 13, 2019) (exercising diversity jurisdiction over a claim brought under Fla. Stat. § 255.05); *see also* 28 U.S.C. § 1332.

8

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1)     Defendants' Motion to Dismiss or in the Alternative Motion to Stay
and Compel Arbitration (Doc. 16) is **GRANTED in part and
DENIED in part**.

(2)     Counts I–III are **DISMISSED without prejudice**.

**ORDERED** in Fort Myers, Florida, on March 19, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE